**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| RENEE E. EGOLF,              )<br>          Plaintiff,          )<br>                              )<br>     v.                       )<br>                              )<br>ANDREW M. SAUL,               )<br>Commissioner of Social Security )<br>Administration,               )<br>          Defendant.          ) | CAUSE NO.: 1:18-CV-300-JD-JPK |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed on September 19, 2018, and a Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 17], filed on May 23, 2019. Defendant filed a response on July 3, 2019 [DE 20]. Plaintiff did not file a reply, and the deadline by which to do so has passed.

On March 7, 2019, District Court Judge Jon E. DeGuilio entered an Order [DE 12] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On April 30, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning September 21, 1984. Among other conditions, Plaintiff alleged impairments relating to the total amputation and surgical reattachment of her right hand due to a traumatic injury

when she was working in a factory in 1984, along with lumbar and cervical spondylosis, low back pain, neck pain, carpal tunnel, anxiety, and depression. (AR 75, 103-04, 110-11).[1] This was Plaintiff's third application for social security benefits since the injury to her right hand; the first two applications were denied by a hearing decision in September 1985 and an initial determination in October 2012, both of which Plaintiff failed to appeal. (AR 16, 92-102, 208, 250-51; *see also* Pl's Br. 2, ECF No. 17). Plaintiff's April 2015 application was also denied initially and on reconsideration. (AR 103-22). Plaintiff then requested a hearing, which was held before an Administrative Law Judge (ALJ) on July 18, 2017. (AR 38). On January 31, 2018, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.
>
> 2.  The claimant engaged in substantial gainful activity (SGA) during the following periods: in February and May 2013, in May 2014 and in May 2015 resulting in a finding of not disabled through May 31, 2015.
>
> 3.  However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address this period the claimant did not engage in substantial gainful activity.
>
> 4.  The claimant has the following severe impairments: residuals of remote traumatic injury with reattachment and reconstruction surgeries secondary to traumatic amputation; lumbar facet arthrosis with degenerative disc disease (DDD); cervical facet arthrosis with DDD and spondylosis; migraines; fibromyalgia; obesity; restless leg syndrome; and myalgia.
>
> 5.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

6.     The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with lifting/carrying/pushing/pulling 10 pounds frequently and occasionally, except as reduced by the following. The claimant can lift a ream of paper, if needed, with the left hand and the right dominant hand used as a helper. The claimant can sit 45 minutes and up to three hours at a time, and up to six hours in an eight-hour workday, can stand 15 minutes at a time, can walk 15 minutes at a time, and can stand and/or walk two hours in an eight-hour workday. The claimant should not climb ropes, ladders or scaffolds and can occasionally kneel, crouch, crawl, balance, climb ramps/stairs and bend/stoop in addition to what is required to sit. The claimant cannot necessarily perform significant handling, grasping, turning of large objects with forceful strength with the dominant right hand, nor can she perform frequent handling, fingering, feeling and manipulating with the dominant right hand. She can use her dominant right hand to assist the left non-dominant hand to load paper into a printer as needed and can use her dominant hand to hunt and peck on a computer keyboard for the purpose of inputting data. She has no limitations of function with the non-dominant left hand in using a mouse. The claimant should avoid work within close proximity to very loud noises (*i.e.* level 5) such as a fire alarm or very bright flashing lights such as a strobe more than occasionally.

7.     The claimant is capable of performing past relevant work as a tax preparer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

8.     The claimant has not been under a disability, as defined in the Social Security Act, from September 21, 1984, through the date of this decision.

(AR 19-29).

The Appeals Council denied Plaintiff's request for review on August 8, 2018 (AR 1-8), rendering the ALJ's January 2018 decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial

3

evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine

whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff makes two arguments for reversal of the ALJ's January 2018 decision: (1) the ALJ erred by "improperly discounting the consultative examiner opinion as to her problems turning her neck," and (2) the ALJ's assessment of Plaintiff's subjective limitations improperly relied on her work history and improperly discredited her "work-related mental impairments." (Pl.'s Br. 5-8, ECF No. 17). As explained below, the Court agrees that the ALJ improperly discounted the consultative examiner's opinions concerning Plaintiff's head-turning difficulties, and partly agrees with Plaintiff's arguments concerning the ALJ's assessment of her subjective limitations.

**I.       Consultative Examiner Opinion Regarding Plaintiff's Neck Issues**

Plaintiff's first challenge concerns an October 6, 2015 consultative medical examination by Dr. H.M. Bacchus, Jr. (AR 459-62). Based on that examination, Dr. Bacchus reported deficits involving Plaintiff's right hand and right upper extremities; limitations in her capacity for repetitive or moderate-to-heavy lifting, pushing, pulling, overhead reaching, and fine finger manipulation on the right side; and "difficulties with prolonged standing and walking, repetitive bending, twisting and turning (neck in particular), squatting and climbing." (AR 460-61). Regarding Plaintiff's difficulties with her neck, Dr. Bacchus noted her reports of chronic neck pain, "worse with prolonged positions, bending, lifting, twisting and turning, and overhead reaching"; that her neck pain radiates to the left shoulder worse than the right; that "she has greater difficulty looking to the left than right"; and that "her neck is somewhat stiffened in nature and she tends to do the whole body turn to look side-to-side." (AR 459-61). Dr. Bacchus also opined that Plaintiff has reduced range of motion in her neck, her lower back, shoulders, and extremities as indicated in the "ROM chart" attached to his opinion, which reported reduced flexion, extension, lateral flexion, and rotation of Plaintiff's cervical spine. (AR 460, 462).

The ALJ's decision noted Dr. Bacchus's opinions that Plaintiff had reduced range of motion in the neck/cervical and lumbar spine, "somewhat stiff neck with turning of the whole body to look from side-to-side," and difficulties with "twisting and turning, particularly with the neck." (AR 26-27). Moreover, as the Commissioner acknowledges, the ALJ also "noted similar earlier exams," including results from April to October 2015 showing cervical/lumbar spondylosis and limited neck/cervical/lumbar range of motion. (D's Mem. 3-4 (citing AR 26, 406-38, 448-55, 568-88), ECF No. 20). Yet, while the ALJ included limitations in Plaintiff's RFC corresponding to many of Dr. Bacchus's other findings (*e.g.*, difficulties standing, walking, lifting, carrying,

pushing, pulling, climbing, bending, handling, and fingering), no limitation was included to address Plaintiff's difficulty turning her head. (A.R. 24). As Plaintiff argues, rejecting or discounting a consultative examiner's opinion regarding a claimant's functional limitations "can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." (Pl.'s Br. 6, ECF No. 17 (quoting *Beardsley*, 758 F.3d at 839)). The question presented here, therefore, is whether the ALJ provided the requisite "good explanation" for rejecting the portion of Dr. Bacchus's consultative examination opinion concerning Plaintiff's difficulty turning her head and omitting any limitation to accommodate that difficulty from her RFC.

The Commissioner argues that the ALJ provided two sound reasons for rejecting Dr. Bacchus's opinion regarding Plaintiff's head-turning limitation: (1) "that the overall record did not support the CE's assessed limitations throughout the entire period at issue," and (2) "that Plaintiff's overall treatment history was best reflected in the DDS [agency reviewers'] assessment, which considered the broader record and Plaintiff's cervical impairment (but opted not to incorporate limitations on neck movement)." (D's Mem. 4, ECF No. 20). Regarding the first argument, as the Seventh Circuit recently observed, affirming an ALJ's decision not to include an RFC restriction to accommodate medically documented head-turning difficulties is a "thornier" issue, but still can be affirmed where the ALJ fully considers that medical evidence when determining the claimant's RFC. *See Green v. Saul*, 781 Fed. App'x 522, 528-29 (7th Cir. 2019). Contrary to the Commissioner's contentions, however, the ALJ here failed to give the medical evidence concerning Plaintiff's neck limitations such careful consideration. According to the Commissioner, "the ALJ observed that Plaintiff reported improvement with medication, branch block injections, and radio frequency ablation" and concluded that "Plaintiff's neck issues did not appear to be significant after October 2015." (D's Mem. 4, ECF No. 20 (citing AR 26, 406-38,

7

448-59, 562-88)). But the discussion in the ALJ's decision to which the Commissioner points does not mention improvement in Plaintiff's limited neck/cervical range of motion or head-turning difficulties (*see* AR 26-28), and the records cited by the ALJ (and the Commissioner) indicate that Plaintiff's limited range of motion and neck pain continued after such treatments and after October 2015. (*See*, *e.g.*, AR 406-07, 449-50 (5/19/15 and 9/29/15: noting continuing limited range of motion and pain in head and neck, despite "moderately improved" condition after injections in May and June 2015); AR 562 (4/25/16: "chronic myalgias, worse in neck and shoulders"); AR 582 (12/19/2016: "neck pain and low back pain . . . for 2 years"). Plaintiff's medical record thus provides little if any basis to discount Dr. Bacchus's opinions regarding Plaintiff's neck pain and head-turning difficulties, since treatment notes indicate pain and limited range of motion in Plaintiff's head and neck consistently before Dr. Bacchus's examination (*see*, *e.g.*, AR 419 (4/27/15); AR 416 (5/8/15); AR 407 (5/19/15); AR 450 (9/29/15) and continuing neck pain thereafter (AR. 562, 582), even while Plaintiff's symptoms were otherwise improving.

The Commissioner's further argument that the ALJ reasonably relied on the non-examining opinions of the agency reviewers to reject Dr. Bacchus's opinions regarding Plaintiff's head-turning difficulties is similarly problematic. For one thing, the ALJ did not cite the agency reviewers' opinions as a reason to discount Dr. Bacchus's opinions regarding Plaintiff's neck limitations (AR 27-28), and this Court "is confined to the rationales offered by the ALJ." *Shauger v. Astrue*, 675 F.3d 690, 695-96 (7th Cir. 2012).[3] Nor is that absence of reliance surprising, since the initial agency review predated Dr. Bacchus's examination and later treatment notes regarding

---

[3] *See also Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order") (citing *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014)); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("the ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it").

Plaintiff's neck pain (AR 103-10, 461, 449-50, 562, 582), and ALJs should not rely on outdated opinions of non-examining agency consultants if later evidence "could have changed the reviewing physician's opinion." *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)).[4] And while the agency reviewer on reexamination acknowledged several of Dr. Bacchus's findings, the reviewer failed to note Dr. Bacchus's opinions regarding Plaintiff's head-turning difficulties (AR 118), thus providing no contrary opinion on which the ALJ could have relied. Moreover, as even the Commissioner acknowledges, the ALJ rejected both agency reviewers' recommendations of light work and included more stringent restrictions in Plaintiff's RFC to address other limitations noted by Dr. Bacchus (*e.g.*, standing, walking, lifting, carrying, pushing, pulling, climbing, bending, handling, and fingering). (AR 24, 28, 459-62; *see also* D's Mem. 4-5, ECF No. 20 ("the ALJ explained that the DDS opinions were considered in the context of the entire record; and ultimately, additional limitations were warranted," because "a broader consideration of Plaintiff's impairments, objective findings, and other opinions – including the 2015 CE report – warranted additional limitations. . . . As a result, the RFC further restricted Plaintiff to sedentary work, and the ALJ found additional limitations on climbing and using hands."). So there is little reason to believe the ALJ silently relied on the agency reviewers' omission of a head-turning limitation, when he otherwise rejected their conclusions that departed from Dr. Bachus's opinions on so many other issues.

In similar circumstances, courts have suggested heavier weighting for the opinion of a consultative examiner like that of Dr. Bacchus. Although "an ALJ is not required to credit the

---

[4] *See also Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) ("the ALJ erred by accepting Dr. Ruiz and Dr. Sands's reviews of the evidence uncritically despite the fact that they never examined Thomas and did not have the benefit of much of the 2011 treatment records when they created their opinions") (citing Seventh Circuit decisions); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016 ("the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician").

agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence," the opinion of an examining source generally receives "more weight" than the opinion of a non-examining source. *Beardsley*, 758 F.3d at 839 (quoting 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1): "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," and "a contradictory opinion of a non-examining physician does not, by itself, suffice." *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). As *Beardsley* makes clear, moreover, this principle applies with particular force to the opinion of an examining agency physician like Dr. Bacchus, 758 F.3d at 839, who is "unlikely therefore to exaggerate an applicant's disability." *Garcia v. Colvin*, 741 F.3d 758, 761-62 (7th Cir. 2013). Thus, even assuming the ALJ meant to rely on the non-examining agency reviewers when he rejected Dr. Bacchus's consultative examination opinion and omitted any head-turning limitations from Plaintiff's RFC, the problem in this case is the same problem addressed in *Beardsley*: "the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor." 758 F.3d at 839.

Accordingly, the Court recommends remand for reconsideration of Dr. Bacchus's opinions regarding Plaintiff's neck and head-turning limitations and their impact, if any, on Plaintiff's RFC. But this is not to say that a disability finding or even a different RFC must be reached on remand. The Court concludes only that the ALJ failed to explain whether or why he rejected Dr. Bacchus's opinions regarding those limitations, as required by Seventh Circuit case law. *See Beardsley*, 758 F.3d at 839; *Vanprooyen*, 864 F.3d at 573; *Gudgel*, 345 F.3d at 470). The ALJ also failed to explain his reasons for omitting any RFC limitation to accommodate Plaintiff's head-turning

difficulties after expressly acknowledging substantial evidence documenting those difficulties, including Dr. Bacchus's consultative examination report and multiple consistent medical records. (AR 26-28). The Court therefore recommends remand for reconsideration of that evidence and a clearer explanation of the "logical bridge" between that evidence and the ALJ's RFC determination. But the question of whether Dr. Bacchus's opinions and Plaintiff's medical record ultimately require a head-turning limitation in her RFC is for the ALJ to decide on remand, once having properly explained his reasons with the benefit of any additional medical evidence presented or needed.

## II.     Subjective Limitations

Plaintiff next challenges the ALJ's "credibility analysis" in two respects.[5] Plaintiff first argues that the ALJ misconstrued her hearing testimony and improperly relied upon her work history as a seasonal tax preparer when determining her RFC, and second, that the ALJ improperly discounted her psychological limitations and correspondingly excluded them from her RFC. (Pl.'s Mem. 7-8, ECF No. 17). For the reasons discussed below, the Court agrees that the first issue requires further consideration on remand but disagrees with the second argument.

### A.     Termination of Past Work Due to Worsening Physical Symptoms

The ALJ's analysis of Plaintiff's work history began by explaining that she "sustained seasonal work as a tax preparer" for an H&R Block franchise every year beginning with the 2004 tax season through May 2015 (AR 19), but since Plaintiff failed to appeal the denial of her prior

---

[5] As both sides acknowledge, SSR 16-3p superseded SSR 96-7p effective March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The new ruling eliminated the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character," but rather, an assessment of the "intensity and persistence" of a claimant's symptoms. *Id*; *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character"). As both sides correctly acknowledge the applicability of SSR 16-3p in this case (Pl.'s Br. 7, ECF No. 17; D's Mem. 3 n.2, ECF No. 20), there is no dispute as to the controlling standard, notwithstanding Plaintiff's use of the term "credibility analysis."

application for benefits in October 2012, only the subsequent period was under review. (AR 20). As to this latter period, the ALJ next concluded that Plaintiff's seasonal tax preparer work constituted substantial gainful activity (SGA) in February and May 2013, in May 2014, and in May 2015, which together precluded an award of benefits because "the claimant did not have a twelve month period in which [she] was not engaging in substantial gainful activity during this time frame." (AR 20). Plaintiff disputes none of these findings and instead challenges only the ALJ's "credibility analysis." (*See* Pl.'s Br. 1, 7-8, ECF No. 17). Specifically, Plaintiff argues that the ALJ improperly relied on her "ability to sustain functioning in past relevant work" to "attack her credibility" and support an RFC that "broadens" use of her impaired right hand "to hunt and peck on a computer keyboard for the purpose of inputting data." (*Id*.; AR 24). According to Plaintiff, this faulty determination was outcome determinative because the ALJ in turn relied on this incorrectly broadened RFC (and Vocational Expert (VE) testimony that likewise relied on that RFC) to conclude at step four of the sequential analysis that Plaintiff is able to perform her past seasonal work as a tax preparer and therefore not disabled. (Pl.'s Br. 8, ECF No. 17).

The Court agrees with Plaintiff that the ALJ's assessment of her subjective limitations regarding the use of her impaired right hand requires further consideration and explanation on remand. (*See* AR 24). While the Commissioner is correct that an ALJ's evaluation of subjective limitations should be upheld unless "patently wrong" (D's Mem. 7, ECF No. 20), such an assessment fails to pass muster under this standard when it "lacks explanation or support" and instead "relies on inferences that are not logically based on specific findings and evidence." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Rather, "the ALJ must 'explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.'" *Murphy v.*

*Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (quoting *McKinzey*, 641 F.3d at 890)). The ALJ's assessment of Plaintiff's subjective limitations concerning the use of her injured right hand failed to meet this standard. Although the ALJ provided three bases for his conclusion that Plaintiff "can use her dominant hand to hunt and peck on a computer keyboard for the purpose of inputting data" – Plaintiff's hearing testimony, a questionnaire from her employer regarding her seasonal tax preparer work, "and the absence of clinical findings supportive of alleged progressive worsening" (AR 25, 29) – the ALJ failed to confront contrary indications in this and other evidence, or explain how he arrived at his RFC determination despite them.

For instance, the ALJ found from Plaintiff's hearing testimony that she "hunted and pecked with the right hand for data entry and she used the left hand for mouse work." (AR 19). As Plaintiff explains, however, she testified that she could hunt and peck with her finger on her right hand only for number input, not that she could "hunt and peck" on a keyboard more generally. (Pl.'s Br. 8, ECF No. 17). While the Commissioner dismisses this as "an unreasonable interpretation of Plaintiff's testimony" (D's Mem. 9, ECF No. 20), the hearing transcript supports it:

> Q [by ALJ]   Okay. All right. Inputting, you used the keyboard to do inputting?
>
> A   For -- yes.
>
> Q [by ALJ]   Which hand would you use?
>
> A   This --
>
> Q [by ALJ]   Your right hand?
>
> A   -- right, yeah. Just for the -- the number.
>
> Q [by ALJ]   So you were using as a finger pointer basically?
>
> A   Yeah.
>
> \*   \*   \*

>Q [by ALJ]   So your left hand you would use the mouse to click through the pages and to find the appropriate spots to do inputting, does that sound about right?
>
>A.   U-huh. Uh-huh. Right.
>
>Q [by ALJ]   And you used your right hand to peck the numbers you needed?
>
>A.   Right.

(AR 47-49).

From this testimony, the ALJ inferred not only that Plaintiff "can use her dominant hand to hunt and peck on a computer key board for the purpose of inputting data" (AR 24), but also that her "hunt and peck approach" was no different from "other seasonal tax preparers who also may hunt and peck when typing in data." (AR 19). But Plaintiff's testimony describes only pressing number keys with her finger and says nothing about "typing in data" or "inputting data," and the ALJ failed to explain how that testimony supported the inference that Plaintiff can use her right hand to do these other things. As importantly, the transcript indicates that any misinterpretation of Plaintiff's testimony on this point may have been material to the Vocational Expert on whose testimony the ALJ relied, since he sought clarification of Plaintiff's ability to use her dominant hand to "hunt and peck for the purpose of inputting data" before opining on whether she could perform her past work. (AR 86). Based on the ALJ's explicit assurance that Plaintiff could do so, the VE opined that Plaintiff could perform the work of a tax preparer "as she performed it in this case," but not "as is customarily done." (AR 87). Thus, while the ALJ saw no "persuasive evidence" that Plaintiff's "hunt and peck approach was different than other seasonal tax preparers" (AR 19), the VE's testimony indicated precisely that.

The ALJ's consideration of the questionnaire provided by Plaintiff's employer was similarly one-sided. The decision notes the employer's statements that Plaintiff did not ask for help or assistance more than other employees, and that her work quality was such that she would be

14

rehired. (AR 19-20 (citing AR 247-49)). But the ALJ rejected several statements in the employer's report relaying that Plaintiff missed work during the 2015 tax season due to "health issues," that these "days missed" were "special considerations given to the employee" to accommodate her health issues, and that Plaintiff did not return for in 2016 also for "health reasons." (AR 247-49). The ALJ dismissed these statements as mere "speculation" based on "the claimant's subjective report" in the absence of "persuasive evidence that the employer has any documented medical training" that could "enhance" their weight (AR 19), and therefore found "no persuasive documented evidence by the employer for any provided accommodation." (AR19). But Plaintiff explained repeatedly during the hearing that she left her job at the H&R Block franchise prematurely in March 2015 due to increased pain in her hands, neck, left shoulder, lower back, and legs, and could not return the following year for the same reasons. (AR 54-59, 62-66). This testimony corroborated the reports by Plaintiff's employer that she missed work in 2015 and did not return in 2016 for health reasons. Yet the ALJ improperly failed to explain whether or why he did not consider or believe Plaintiff's testimony, and then summarily rejected her employer's consistent statements as "speculative." Although an ALJ need not address every piece of evidence, he must not ignore an entire line of contrary evidence and disregard testimony that supports it. *See Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (remanding "unsupported credibility assessment" where "ALJ did not really explain, for example, why he did not believe [claimant's] testimony" regarding pain and limitations); *Thomas v. Colvin*, 745 F.3d 802, 806-07 (7th Cir. 2014) (ALJ improperly rejected contrary line of evidence and claimant's consistent testimony).

The ALJ's conclusion that Plaintiff's medical record lacks evidence of "progressive worsening" of her symptoms in 2015 (AR 26-29) similarly disregards treatment notes and imaging

corroborating Plaintiff's testimony that increasing pain and related limitations in her hands, neck, left shoulder, and lower back caused her to stop working in March of that year. (AR 54-59, 62-66). As even the ALJ acknowledged, treatment and imaging records from April to October 2015 showed cervical/lumbar spondylosis and limited neck/lumbar/cervical range of motion and associated pain requiring branch block injections, radio frequency ablation, and narcotics. (AR 26, citing AR 406-38, 448-59, 568-88; *see also* AR 407, 419, 427, 450, 571-72 (indicating degenerative disc disease, lumbar facet arthrosis, cervical facet arthrosis, and degenerative changes in left shoulder during 2015)). And while the ALJ found that Plaintiff's symptoms improved with these treatments (AR 26-28), the record also shows that the improvement was sometimes fleeting. (*See*, *e.g.*, AR 459: complaints of continuing pain after "multiple injections"; AR 568: "The shoulder injection given in June gave relief for 1 day."). Indeed, Plaintiff underwent carpal tunnel surgery on her left hand in June 2015 with continuing pain afterward (AR 424, 437), and then underwent arthroscopic surgery on her left shoulder in November of 2015 following reports of shoulder pain for the previous 8 months. (AR 568, 582). Moreover, as Plaintiff asserts, Dr. Bacchus's October 2015 consultative examination also noted limited range of motion in Plaintiff's neck, shoulders, lower back, and lower extremities, and appears to indicate worsening in the limited dorsiflexion range of motion in Plaintiff's injured hand (ability to bend the hand back toward the lower arm) as compared to an examination in 2012 (20 degrees down to 5 degrees, compared with a normal range of 60 degrees). (*See* Pl.'s Br. 7 and n.25, ECF No. 17 (citing AR 394, 461); *see also* AR 393-95, 462).

Thus, in sum, the record contains substantial medical and other evidence corroborating Plaintiff's testimony that she experienced increased pain and limitations in her hands, neck, lower back, and left shoulder during 2015 that caused her to end her seasonal tax preparer employment

prematurely in March of that year and prevented her return in 2016. Yet the ALJ's decision fails to explain its contrary conclusion that Plaintiff experienced no such worsening of her symptoms in a manner "logically based" on "specific findings and the evidence in the record." *See Murphy*, 759 F.3d at 816 (quoting *McKinzey*, 641 F.3d at 890). The Court "cannot deem the error harmless," moreover, "as it informed several aspects of the ALJ's findings with respect to [Plaintiff's] residual functional capacity and consequently her ability to perform past relevant work." *See Ghiselli v. Colvin*, 837 F.3d 771, 779 (7th Cir. 2016). The Court therefore recommends that the case be remanded for further consideration of Plaintiff's subjective complaints and, relatedly, the ALJ's determinations that Plaintiff "can use her dominant hand to hunt and peck on a computer keyboard for the purpose of inputting data" and remains capable of performing her past seasonal work as a tax preparer. (AR 24, 29). While this Court expresses no view regarding whether those determinations were correct in the first instance or would be on remand, at a minimum, they require better explanation in view of the evidence discussed above.

### B.     Plaintiff's Psychological Symptoms

Plaintiff's second attack on the ALJ's "credibility analysis" is less persuasive. In a one-sentence argument, she claims the ALJ "summarily" discounted "a slew of assessed psychological diagnoses" and then excluded them from Plaintiff's RFC. (Pl.'s Br. 8, ECF No. 17). In addition to being poorly developed, this argument fails to identify any mental limitations that should have been included in her RFC. *See Davis v. Berryhill*, 723 Fed. App'x 351, 356-57 (7th Cir. 2018) (claimant waived challenge that ALJ erred by not including limitations regarding one of her impairments in her RFC "by not developing it in her brief" and failing to explain "what limitations should have been included"). But as importantly, the ALJ's conclusions on this issue were both clearly explained and well supported, and thus far from "patently wrong."

17

As the Commissioner correctly argues, the ALJ thoroughly considered Plaintiff's diagnosed mental impairments (general anxiety disorder, post-traumatic stress disorder with dissociative symptoms, and panic disorder) in light of the full medical record, the opinion evidence, and Plaintiff's own reports and testimony, and reasonably concluded that her mental impairments are not severe. (D's Mem. 8-9, ECF No. 20 (citing AR 21-22)). Notably, Plaintiff does not challenge this determination. And while an ALJ must consider limitations caused by even non-severe impairments when determining an RFC, *Stage*, 812 F.3d at 1125, the ALJ's decision in this case provided a thorough and reasoned analysis of Plaintiff's mental abilities that amply supported his determination not to include any mental limitations in her RFC.

Specifically, the ALJ carefully considered September 2012 and October 2015 consultative psychological examinations reporting "mild complaints, conditions, symptoms and limitations in memory, concentration, social functioning, persistence or pace with ability to independently drive, shop, go to seasonal work, visit a restaurant and go to or watch movies." (AR 21 (citing AR 387-89, 464-67)). The ALJ also noted no "sustained need of mental health treatment nor sustained need for use of psychotropic medications" (AR 21) and Plaintiff's own reports that "mental health conditions, symptoms or limitations do not preclude her from sustaining gainful semi-skilled work" (AR 21 (citing AR 312)) and hearing testimony admitting that previous anxiety and panic attacks also did not keep her from working. (AR 21; AR 68). The decision also discusses reports by Plaintiff and her husband that she attends to her own personal needs, maintains a routine, and is able to shop, drive, and perform household chores (AR 23 (citing AR 268-69, 274, 276-77, 297-98, 306, 327-28, 334, 387-88, 465, 552)), sustains relationships with family and friends and social interactions and activities (AR 23 (citing AR 268, 278, 299, 306, 308, 329, 338, 388, 465)), and is able to follow directions, pay bills, and maintain checking and savings accounts. (AR 23 (citing

AR 269, 271-72, 277, 279-80, 298, 300-01, 306, 308-09, 328, 330-31, 337, 339-40, 466)). Given this ample record and Plaintiff's failure to identify or support any mental limitations that should have been included in her RFC, the Court finds no error in the ALJ's well-supported determination not to do so.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court reverse the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 27th day of January, 2020.

                                          s/ Joshua P. Kolar
                                          MAGISTRATE JUDGE JOSHUA P. KOLAR
                                          UNITED STATES DISTRICT COURT